**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph MORANO, Defendant-Appellant.**

**No. 81–5712**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 10, 1983.

Thomas F. Almon, Miami, Fla. (court-appointed), for defendant-appellant.

Stanley Marcus, U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, JOHNSON and HATCHETT, Circuit Judges.

PER CURIAM:

Appellant Joseph Morano was convicted by a jury in the Southern District of Florida for damaging and destroying the building which contained his business, "Price Cutter, Inc.", by means of an explosive device, in violation of 18 U.S.C.A. §§ 2 and 844(i). The jury also convicted him for devising a scheme to defraud the United States Fire Insurance Company of New York by filing false and fraudulent insurance claims through the mails, in violation of 18 U.S.C.A. § 1341, and for conspiring to violate 18 U.S.C.A. §§ 844(i) and 1341, in violation of 18 U.S.C.A. § 371.

Price Cutter, Inc., which was solely owned by appellant Morano at the time of its destruction, occupied most of the building which Morano leased on a month-to-month basis from its owner, Nazdar, Inc. Morano sublet the remaining portion of the building to Carter and Eunice Benfield, doing business as Carolina Furniture. Carolina Furniture and Price Cutter were separated by a wall, but a sliding door connecting the two businesses was always left open.

Between February 1977 and September 1977, sales at Price Cutter plummeted. During this period, Morano discussed his business with the Benfields and told them he would destroy his business for insurance rather than go down with it. The Benfields protested that they had no insurance. In a discussion between Morano and Matthew Constant, whom Morano was trying to interest as an investor, Constant asked how much inventory Price Cutter had. According to Mr. Constant, Morano grinned and replied that "he had $100,000 worth of fire insurance that he could collect if it would burn out."

In September 1977, Nazdar, Inc., sent an eviction notice to Price Cutter, ordering appellant to vacate by October 1, 1977.

Throughout the last week of September, Morano and his wife removed substantial amounts of property from the store, including sewing machines, heavy coats, jewelry and pottery. On September 29, 1977, Morano closed Price Cutter early. The building was protected against fire and theft by a monitored audio alarm system, but the alarm was not functioning that evening. The wall outlet plug that was taped to the wall had been pulled, and the wires from the backup battery power system had been disconnected. Morano was informed by a manager of the monitoring company that the alarm system was not working. According to the manager's testimony, Morano replied in an uncharacteristically unconcerned manner, "Okay, fine, we'll call the system—the company tomorrow and have them come in and check it out."

Within a few hours an explosion and fire destroyed Price Cutter and severely damaged the contents of Carolina Furniture. An investigation by the Naples, Florida, Fire Department and the Bureau of Alcohol, Tobacco and Firearms (ATF) revealed that the arsonist's entry into the building had not been forced. Pressurized aerosol cans containing ether with M–80 firecrackers taped to them had been placed in strategic locations throughout the store. Two plastic five gallon containers of gasoline had been emptied throughout Price Cutter and ignited. According to both the Fire Marshal, who had investigated approximately two hundred fires, and the ATF Special Agent assigned to the investigation, this method of setting a fire was unusual and unique. In light of this fact, ATF Agent Velasco sent a teletype to every ATF office in the United States requesting information as to whether a similar method had been used in any other arsons. Agent Velasco received only one report of an arson started by that particular method. About a year later, ATF Agent Jenson of Melville, New York, advised Velasco that Anthony Ottomonelli had recently been convicted in New York for using the same method of arson. Agent Jenson forwarded a set of five photos, including a photograph of Otto-

monelli, to Velasco who arranged them into a photospread. Velasco then displayed the spread to Carter Benfield, co-owner of Carolina Furniture. Benfield immediately and positively identified the photograph of Ottomonelli as that of the well dressed man he had seen in Price Cutter talking to Morano a day or two before the fire. Benfield had observed Ottomonelli and another man talking to Morano; when he approached the three men they stopped talking and moved to the back of the store. When Ottomonelli left the store, Morano told Benfield that he was a salesman from New York who was trying to buy the business outright.

After the fire, Morano hired a public adjuster to prepare the fire loss for filing with his insurance company. Morano told the adjuster that all the books and records had been destroyed when, in fact, the fire department had informed appellant that the records had been salvaged and stored. Appellant provided the figures as to quantity and cost for an inventory of the items destroyed by the fire. The inventory and proof of loss, which claimed a loss of $143,-653.15 on the day of the fire, were sent by United States mail to the insurance company at Morano's instructions. Included in the inventory were items that had been observed being removed prior to the fire, such as jewelry and sewing machines, and items that had little or no cost. Morano submitted grossly inflated figures—for example, $11,000 for an air conditioner that had cost $1,000 including installation. When Morano was arrested in his home, the arresting officer observed two commercial sewing machines very similar to those Morano had claimed were destroyed in the fire.

Morano claims that it was reversible error for the district court to allow evidence of Ottomonelli's prior arson convictions and testimony concerning his unusual method for starting fires. He suggests that the evidence could not have been used against Ottomonelli under Fed.R.Evid. 404(b) if he were the defendant, so it should not be admitted in Morano's trial. He also argues that Benfield's identification of Ottomonelli was insufficient to connect Ottomonelli with the Price Cutter fire, so the evidence

should have been excluded under Fed.R. Evid. 403.

■ The district judge apparently admitted this evidence because it was relevant to the existence of a common plan between Morano and Ottomonelli, Fed.R.Evid. 402; see United States v. Jimenez, 600 F.2d 1172, 1173 (5th Cir.), cert. denied, 444 U.S. 903, 100 S.Ct. 216, 62 L.Ed.2d 140 (1979), and because its relevancy was not substantially outweighed by the danger of unfair prejudice to Morano. Fed.R.Evid. 403. Rule 404(b) does not specifically apply to exclude this evidence because it involves an extraneous offense committed by someone other than the defendant. The evidence was not introduced "to show that the defendant has a criminal disposition and that he can be expected to act in conformity therewith," so the policies underlying Rule 404(b) are inapplicable. United States v. Krezdorn, 639 F.2d 1327, 1333 (5th Cir.1981) (dictum). But although Rule 404(b) does not control this situation, the exceptions listed in the Rule should be considered in weighing the balance between the relevancy of this evidence and its prejudice under Rule 403. In this case, the arson at Price Cutter and the arson for which Ottomonelli was convicted bear such striking similarities as to "mark them as the handiwork of the same individual." United States v. Goodwin, 492 F.2d 1141, 1154 (5th Cir.1974); cf. Fed.R.Evid. 404(b) (evidence of plan or identity). Moreover, the trial judge found that Benfield's identification of Ottomonelli from a spread of five photographs was reliable. The trial court's decision to admit evidence under Rule 403's balancing test may not be overturned absent a clear abuse of discretion. Ballou v. Henri Studios, Inc., 656 F.2d 1147, 1153 (5th Cir.1981). We conclude that the trial judge acted within his discretion in finding that the probative value of Ottomonelli's convictions and modus operandi was not substantially outweighed by the danger of unfair prejudice to Morano.

■ Morano's claim that the grand jury process was abused by introduction of the results of a lie detector test is without

merit. An indictment valid on its face cannot be challenged merely because the grand jury acted on inadequate or incompetent evidence. *United States v. Calandra,* 414 U.S. 338, 343–345, 94 S.Ct. 613, 617–618, 38 L.Ed.2d 561 (1974); *Lawn v. United States,* 355 U.S. 339, 349–350, 78 S.Ct. 311, 317–318, 2 L.Ed.2d 321 (1958); *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). And we have found no evidence of prosecutorial misconduct in this case. Immediately following the testimony in question, the Assistant United States Attorney instructed the grand jury that the results of polygraph examinations are not admissible evidence and that the grand jury should disregard any statements concerning the results of Morano's polygraph test. This Court, therefore, need not address the issue of whether prosecutorial misconduct may be the basis for dismissing an otherwise valid indictment.

■ Morano also contends that Counts III and IV of the indictment should have been dismissed because they fail to contain basic elements of the offense of mail fraud. Specifically, they fail to allege that Morano used the postal system. But Morano does not dispute that he was fully aware of the charges and was able to prepare his defense. *See United States v. Welliver,* 601 F.2d 203, 207 (5th Cir.1979). The indictment alleged a scheme to defraud in violation of 18 U.S.C.A. § 1341, involving the submission of fraudulent "claims and documentation in an attempt to obtain payment." It also contained a chart with columns entitled "date," "Addressee," and "Approximate Mail Matter." The validity of an indictment should be judged by practical, not technical, considerations. *United States v. Varkonyi,* 645 F.2d 453, 455–456 (5th Cir.1981). Therefore, we hold that the indictment adequately informed appellant of the basic elements of the offense and that Counts III and IV of the indictment, though perhaps poorly drafted, are valid.

■ Finally, Morano argues that the evidence is insufficient to sustain his convictions. In evaluating his claim this Court has considered the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), resolving reasonable inferences and credibility choices in support of the jury's verdict. *United States v. Henderson,* 588 F.2d 157, 161 (5th Cir.), *cert. denied,* 440 U.S. 975, 99 S.Ct. 1544, 59 L.Ed.2d 794 (1979). The standard of review in either a circumstantial or a direct evidence case is whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc).

■ The evidence showed that Morano's business was failing and that he told the Benfields he would rather burn the business than declare bankruptcy. Since the fire alarm was disconnected the day of the fire and the arsonist did not force his entry, the evidence indicates that this was an "inside" job. The owner of the building, Nazdar, Inc., was underinsured and the Benfields were uninsured, so from an insurance standpoint only Morano had a motive to destroy the premises. And a day or two before the fire, Morano was seen talking in Price Cutter with Anthony Ottomonelli, a convicted arsonist known to use the unusual method of arson that started the Price Cutter fire. After the fire Morano dissembled about the destruction of his records and his merchandise, and he grossly inflated the amount of his loss. This evidence is more than sufficient to sustain the jury's verdict on all counts.

AFFIRMED.