RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SCOTT WYNNE,

        *Petitioner-Appellee,*

    *v.*

PAUL RENICO,

        *Respondent-Appellant.*

Nos. 03-2319; 09-1148

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 01-10247—David M. Lawson, District Judge.

Argued: November 18, 2009

Decided and Filed: June 4, 2010

Before: MARTIN and SUTTON, Circuit Judges; REEVES, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Brad H. Beaver, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. John R. Minock, LAW OFFICES, Ann Arbor, Michigan, for Appellee. **ON BRIEF:** Brad H. Beaver, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. John R. Minock, LAW OFFICES, Ann Arbor, Michigan, for Appellee.

    SUTTON, J., delivered the opinion of the court, in which REEVES, D. J., joined. MARTIN, J. (pp. 8-12), delivered a separate opinion concurring in the reasoning and conclusion of the lead opinion.

_____

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

---

**OPINION**

---

SUTTON, Circuit Judge.  A jury convicted Scott Wynne of murdering his neighbor, Philip Timmerman, and the trial court sentenced him to life in prison.  Unable to obtain relief from the state courts, Wynne petitioned the federal district court for a writ of habeas corpus.  The district court granted the writ, holding that the state courts denied Wynne his constitutional right to present a complete defense when it refused under state evidentiary rules to admit propensity evidence designed to show that someone else—namely, the prosecution's key witness—committed the murder.  We reverse.

I.

On May 18, 1995, Timmerman was shot to death while working on his farm.  No eyewitnesses to the shooting emerged, but several pieces of physical evidence linked Wynne to the crime.  Ballistics evidence identified Wynne's .45 caliber pistol as the murder weapon.  Wynne's fingerprint appeared on the weapon's ammunition magazine.  And footprints at the crime scene matched boots found in Wynne's house.  Wynne also had a motive.  Three days after the shooting, Wynne's friend Mark Peckham contacted the police, telling them that he had heard Wynne say he wanted to kill Timmerman on several occasions, apparently because he thought Timmerman's long-term lease on the Wynne family farm would terminate upon Timmerman's death.  Wynne was so frustrated about his land dispute with Timmerman, Peckham said, that he spoke with Peckham ten to thirty times about murdering Timmerman, sometimes in conversations that turned into detailed descriptions of how he would carry out the crime.

In October 1995, Wynne stood trial for Timmerman's murder.  As part of his defense, Wynne alleged that Peckham had killed Timmerman.  The trial court allowed Wynne to introduce the following evidence to support this theory:  Peckham wanted to frame him to retaliate for various wrongs, including Wynne's purported firing of

Peckham five months before the murder; Peckham acknowledged he had fired some of Wynne's guns in the past and knew where Wynne kept most of his guns, including the .45 caliber murder weapon; Peckham told an investigator he was "really pissed" at Wynne because Wynne "had everything given to him and never returned anything to [his] family," App'x at 2086; and Peckham's insurance agent testified that Peckham had told him at least three or four times in the week after Wynne's arrest that Peckham was "going to put [Wynne] away," *id.* at 2180.

The trial court, however, drew the line at evidence directed only to Peckham's bad character. The court excluded testimony by Peckham's former girlfriend that, eight years before the murder when she was in middle school, he had threatened to cut off the fingers of a classmate who touched her breasts. It excluded her testimony that, several years earlier, Peckham had abused her and threatened to kill her and that Peckham's trailer mysteriously burned down within hours of their break-up. It excluded testimony that, after a failed suicide attempt five years earlier, Peckham declined psychologically, becoming "passive aggressive" and intent on exacting revenge in secretive ways. *Id.* at 1952. And it excluded evidence of Peckham's alleged admission to a co-worker several months before the murder that he had "done something so bad in his past that if the police ever found out about it he would go to prison for life." *Id.* at 2070.

The trial court also excluded evidence about Peckham's apparent interest in women's underwear. At some point during the trial, Wynne's investigator discovered a blue bag in Wynne's house, which contained a boot with tread that matched the footprints found at the crime scene. The defense did not mention until several days after delivering the bag to the court that it found a black camisole near the bag. With this evidence, the defense sought to link Peckham to the bag via his apparent underwear fascination, but the court would not allow it.

A jury convicted Wynne of murder, and the trial court sentenced him to life in prison. *See People v. Wynne*, No. 192512, 1999 WL 33328893, at *1 (Mich. Ct. App. Dec. 3, 1999). After failing to obtain relief in the state courts, Wynne filed a petition for a writ of federal habeas corpus in June 2001, arguing that the trial court violated his

constitutional right to present a complete defense by excluding the Peckham evidence. In September 2003, the district court granted the writ. *See* 279 F. Supp. 2d. 866 (E.D. Mich.). After the State filed a notice of appeal, both parties alerted the district court that it had premised part of its ruling on several factual inaccuracies in Wynne's pleadings, which the Michigan Attorney General's Office had failed to notice. At Wynne's request, we remanded the case to the district court to take a second look at the case, including the new light cast on it by the revised characterizations of the evidence. In January 2009, the district court issued a supplemental opinion, which also granted the writ but revised its reasons for doing so. *See* 595 F. Supp. 2d. 775.

## II.

Although Wynne filed his habeas petition after the Anti-Terrorism and Effective Death Penalty Act of 1996 went into effect, *see Lindh v. Murphy*, 521 U.S. 320, 326 (1997), we give fresh review to his federal claim because the state courts addressed only his state law grounds for relief, *see Wynne*, 1999 WL 33328893, at *1, which means they did not "adjudicate[]" the federal claim "on the merits," 28 U.S.C. § 2254(d); *see Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply."). The State does not argue that Wynne has failed to exhaust his federal claim in the state courts or that a procedural bar otherwise applies to this claim.

The Constitution guarantees "a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quotation marks omitted), but "not an unlimited right to ride roughshod over reasonable evidentiary restrictions," *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc). A defendant must "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). The right to present a complete defense—including the third-party culpability defense raised here—thus does not mean that a defendant may introduce whatever evidence he wishes, only that any state-law

evidentiary restrictions cannot be "arbitrary" or "disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quotation marks omitted).

The question here, then, is not whether the Michigan courts properly construed one of the State's evidentiary rules, namely Evidence Rule 404(b)'s prohibition against introducing character evidence to show that an individual acted consistently with the evidence. It is whether the state courts' construction of their evidentiary rule—a matter for them, not for us, to decide—violates the Sixth Amendment right to present a complete defense.

Unfortunately for Wynne, we already have resolved the point. In *United States v. Lucas*, 357 F.3d 599 (6th Cir. 2004), the defendant tried to introduce propensity evidence—a previous conviction for cocaine possession—to prove that a third party, not the defendant, committed a drug crime. *Id.* at 604. Relying on *Federal* Rule 404(b), which likewise bars evidence about a person's character "in order to show action in conformity therewith," the district court excluded the evidence. In affirming, we first explained that Federal Rule 404(b) applies to all propensity evidence, whether used to show that the defendant or another individual acted in conformity with their prior misconduct. *Id.* at 606. We then rejected Lucas' constitutional argument. The Sixth Amendment right to present "a complete defense," we explained, "does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence." *Id.* And "[t]he exclusion of [the third party's] prior conviction," we explained, "did not violate Lucas's constitutional right to present a defense," because "Lucas was able to explore her theory that [another individual] was in fact the culprit" through other evidence. *Id.* at 606–07.

What was true in *Lucas* is true today. Just as Federal Rule 404(b) permissibly limited Lucas's right to introduce propensity evidence directed toward a third party, so the same kind of state law evidentiary rule—indeed essentially the same rule, *see* Mich. R. Evid. 404(b)—permissibly limited Wynne's right to introduce propensity evidence about Peckham. And just as this rule did not bar Lucas from introducing *other* evidence

to support this defense, so the same was true for Wynne, who introduced considerable non-propensity-based evidence in support of the Peckham-did-it defense. The court, for example, allowed Wynne to introduce the following: Peckham wanted to frame Wynne to retaliate for various wrongs, including Wynne's purported firing of Peckham five months before the murder; Peckham acknowledged he had fired some of Wynne's guns in the past and knew where Wynne kept most of his guns, including the .45 caliber murder weapon; Peckham told an investigator he was "really pissed" at Wynne because Wynne "had everything given to him and never returned anything to [his] family," App'x at 2086; and Peckham's insurance agent testified that Peckham had told him at least three or four times in the week after Wynne's arrest that Peckham was "going to put [Wynne] away," *id.* at 2180. The state trial court, in short, permitted Wynne to introduce considerable evidence that Peckham was the murderer, and accordingly its reasonable limit on sheer propensity evidence, some of it eight years old and much of it far removed from the issues in the case, did not deprive Wynne of his right to make a complete defense.

That leaves one other contention—that the state trial court misapplied its own rule of evidence. But we cannot grant the writ based on our disagreement with "state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. 62, 68 (1991), unless the state-court determination is so "fundamentally unfair" that it deprives a defendant of due process, *Bey v. Bagley*, 500 F.3d 514, 519–20 (6th Cir. 2007). Wynne does not argue that the state court's application of Michigan Rule 404(b) was so askew that it violated this standard. And his explanations for introducing the evidence—that it would show Peckham's "character for seeking secretive revenge, his violent tendencies, mental deterioration, and readiness to frame another" and that Peckham "was capable of murdering Timmerman" and framing Wynne, Wynne's Br. at 46—represent precisely the kind of propensity evidence that any court (state or federal) reasonably could exclude, whether under Rule 404(b) or for that matter under Rule 403.

In defense of the district court's contrary ruling, we note that it faced a more vexing question when it first granted the writ in 2003. Not only had our 2004 *Lucas*

decision not yet come down, but the parties' filings up to that point also suggested that Peckham's episodes of erratic behavior occurred soon before—and even soon after—Timmerman's murder. It later became clear that much of Wynne's propensity evidence against Peckham stemmed from events up to eight years earlier. Now that the parties have corrected the record, and now that we have *Lucas* to guide us, there is far less to Wynne's position.

III.

For these reasons, we reverse the district court's judgment.

---

**CONCURRENCE**

---

BOYCE F. MARTIN, JR., Circuit Judge, concurring.  I concur in the reasoning and conclusion of the lead opinion, but do so with reservations because the analysis and conclusion are based on a faulty precedential foundation.  The majority has found that the district court erred in granting Scott Wynne habeas relief on the ground that the state court denied Wynne his constitutional right to present a defense.  The state court refused under state evidentiary rule 404(b) to admit evidence that Wynne proffered to show that a third party committed the murder and framed Wynne for its commission.  As the majority states, we cannot grant habeas relief solely because we disagree with a state court's interpretation of its own evidentiary rules.  Rather, in order to grant habeas in this case, we must find that the state court's application of its evidentiary rules (1) were arbitrary and disproportionate to the purpose the state rule was designed to serve, and (2) deprived Wynne of his Sixth Amendment right to present a defense.[1]  Further, as the majority correctly points out, in *United States v. Lucas*, 357 F.3d 599, 606 (6th Cir. 2004) we held that the identical 404(b) analysis engaged in by the Michigan state court also applies in this Court "generally . . . in cases where such evidence is used with respect to an absent third party not charged with any crime."  Because it makes no sense to contend that it violates the Constitution for a state court to apply an evidentiary rule in a certain way  but that a federal court can, I cannot dissent from the majority's opinion.[2]  Thus, I must concur, but I do not like the result we reach.

---

[1]The majority discusses the fact that this case involves a state court applying state evidentiary rules.  It is true that Michigan has never adopted the Federal Rules of Evidence per se, but as the Michigan Rules of Evidence advisory notes state, "MRE 404(b) is identical with Rule 404b of the Federal Rules of Evidence except that the word 'plan' is replaced by the phrase 'scheme, plan, or system in doing an act,' and there is added the phrase 'when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged.'" MICH. R. EVID. 404, 1978 advisory committee's note.

[2]The current case, while similar to *Lucas* in many respects, also differs in several substantive ways.  Thus, I believe that, had this case been brought under federal law, it is easily distinguished from *Lucas.*

However, I write separately because I believe that the *Lucas* opinion was wrongly decided. As was pointed out in the concurrence to the *Lucas* opinion, there is a split among the circuits regarding the appropriate standard to apply to reverse 404(b) admitted evidence. *Lucas*, 357 F.3d at 612. The majority of circuits have rightly held that Rule 404(b) primarily exists to protect a criminal defendant from the prejudice of propensity taint and should not be applied in cases where, as here, the defendant offers prior-act evidence of a third-party to prove some fact relevant to his defense.[3] Only two other circuits have taken the approach of the *Lucas* majority, holding that the plain language of the rule, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of *a person* in order to show action in conformity therewith", FED. R. EVID. 404(b) (emphasis added), protects every *person*, not just the criminal defendant or a victim.

Rule 404(b) was born of the common law in an effort to protect parties from wrongful inferences derived from character evidence. The "reason for the inadmissibility of evidence of other crimes, wrongs, or acts is that such evidence is irrelevant to prove the conduct in question." 22 Charles Alan Wright & Kenneth W. Graham, *Federal Practice and Procedure* § 5239 (1st ed. 1978) (noting that it "has long been accepted in our law . . . [t]hat the doing of one act is in itself no evidence that the same or a like act was again done by the same person." Charles Wigmore, *Wigmore's Code of the Rules of Evidence in Trials at Law* § 192, p. 642 (3d ed. 1940) (emphasis

---

[3]The First, Second, Third, Fifth, and Eleventh Circuits have determined that Federal Rule of Evidence 404(b) is not applicable to evidence regarding acts of someone other than the defendant. *See United States v. Morano*, 697 F.2d 923, 926 (11th Cir. 1983) (holding that "Rule 404(b) does not specifically apply to exclude . . . evidence [that] involves an extraneous offense committed by someone other than the defendant [because] the evidence was not introduced to show that the defendant has a criminal disposition . . . so the policies underlying Rule 404(b) are inapplicable."); *United States v. Gonzalez-Sanchez*, 825 F.2d 572, 583 (1st Cir. 1987) (holding that "Rule 404(b) does not exclude evidence of prior crimes of persons other than the defendant."); *United States v. Sepulveda*, 710 F.2d 188, 189 (5th Cir. 1983) (holding that Rule 404(b) only applies to acts by the defendant individually.); *United States v. Stevens*, 935 F.2d 1380, 1401-06 (3d Cir. 1991) (allowing a defendant to introduce "other crimes" evidence against a third-party under Rule 404(b) because "prejudice to the defendant is no longer a factor."); *United States v. Blum*, 62 F.3d 63, 68 (2d Cir. 1995) (stating that Rule 404(b) permits "admission against third parties of evidence of 'crimes, wrongs or acts' if used to show 'motive, opportunity, intent, preparation, plan, knowledge, identity of absence of mistake or accident.") (quoting *United States v. Aboumoussallem*, 726 F.2d 906, 911-12 (2d. Cir. 1984)); *but see Agushi v. Duerr*, 196 F.3d 754, 760 (7th Cir. 1999) (holding that Rule 404(b) "does apply to third parties."); *United States v. McCourt*, 925 F.2d 1229, 1232 (9th Cir. 1991) (holding that, "because Rule 404(b) plainly proscribes other crimes evidence of a person, it cannot reasonably be construed as extending only to the accused.") (internal citations and quotations omitted).

added).  Although this logic could theoretically apply equally to defendants, victims, or third parties, Wigmore points out that the common law rule barring prior bad act evidence existed to prevent the inference that a "defendant in a criminal case" perpetrated the "criminal act charged."  Charles Wigmore, *Wigmore's Code of the Rules of Evidence in Trials at Law* §§ 355- 56, p. 81. (3d ed. 1942);  *See also United States v. Dudek*, 560 F.2d 1288, 1295-96 (6th Cir. 1977) (stating that Rule 404(b) restates the common law).  Furthermore, history makes clear that the policy underlying the rule at common law sought to protect the *criminal defendant*.  *See* Wright & Graham, *Federal Practice and Procedure: Evidence* § 5239, pp. 436-39 (1978).  Moreover, although the 404(b) Advisory Committee Notes do not clarify the meaning of "a person", they generally discuss prosecutorial use of propensity evidence against a defendant and the use of propensity evidence to show that a victim "had it coming."  The notes give no indication that they were intended to protect any other party.

We have summarized the policy concerns driving Rule 404(b), noting that "two concerns are expressed by the first sentence of Rule 404(b):  (1) that the jury may convict a 'bad man' . . . and (2) that the jury will infer that because the *accused* committed other crimes, he probably committed the crime charged."  *United States v. Phillips*, 599 F.2d 134, 136 (6th Cir. 1979) (emphasis added).  In short, 404(b) deals with (a) concerns that a jury will make prejudicial inferences based upon someone being a "bad guy" and thus convict a defendant and (b) logically dubious inferences based upon an imagined connection between past acts and current ones.

Generally, the concern with dubious inferences applies to defendants and to third parties, as it is equally irrational to assume that, because either a defendant or third party committed a past bad act, he is somehow connected to a particular current bad act.  Here, this concern seems equally applicable to both Wynne and Peckham.

However, the prejudice concern does not apply equally to a defendant and a third party not being tried for a crime.  Specifically, a third party not on trial for a crime is in no danger whatsoever that the jury will convict him for being a "bad man."  Thus, here and in probably most reverse evidence cases, one of 404(b)'s two justifications would

vanish completely. In such a situation, one wonders if, left with only one pillar to support it, the whole structure of 404(b) collapses under the weight of a defendant's constitutional right to present a defense.**4** Most circuits have found that it does. *See supra* n. 3. Given the great weight that our Constitution and society place on the right to present a defense, if the policy reasons driving 404(b) are considerably weakened—as they are in cases of reverse 404(b) evidence—in the majority of circumstances, the constitutional right to present a defense easily trumps the sole remaining 404(b) interest. This Court is clearly on the losing side of the equation. It is my hope that this Court and other courts will see the wisdom of distinguishing close cases involving important Sixth Amendment questions from *Lucas* and will admit 404(b) evidence under a simple relevancy-balancing test, thus erring on the side of allowing defendants to present their best defense.

Had this Court correctly decided the reverse 404(b) evidence question in *Lucas*, then we could have reached the question of whether the state court ran afoul of Wynne's constitutional rights in applying its evidentiary rules to exclude some of his proffered evidence. Were I hearing this case on direct appeal, I would have no difficulty—given the state's greatly diminished evidentiary interest— in finding that the state court erred in not permitting Wynne to present some or all of the excluded evidence in crafting his defense. I recognize, however, that AEDPA requires a more exacting level of deference.

---

**4**The absence of prejudice in the context of reverse 404(b) evidence has been emphasized by other circuits. The Second Circuit has noted that:

> [W]e believe that the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when the prosecutor uses such evidence as a sword . . . . [R]isks of prejudice are normally absent when the defendant offers similar acts evidence of a third-party to prove some fact pertinent in the defense. In such cases the only issue arising under 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense.

*Aboumoussallem*, 726 F.2d at 911-12 (internal citations omitted). The Third Circuit makes similar observations:

> [W]hen the defendant is offering [other crimes testimony], prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility, since ordinarily, and subject to rules of competency, an accused in entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made.

*Stevens*, 935 F.2d at 1401 (citation omitted).

Regardless, I believe that the same interest that would require admission of this evidence in a direct appeal case applies equally to Wynne's habeas attack. The fact that, as a third party, there is no risk that Peckham would be unfairly convicted for being a "bad person" drastically reduces the need to exclude the questionable evidence, while Wynne's need to present a defense remains just as weighty.[5] Thus, sitting in habeas, but for *Lucas*, I would find that the evidence was excluded in violation of Wynne's constitutional rights.

However, as this panel is bound by the decisions of a prior panel, no matter how illogical,[6] I must concur.

---

[5]It is true that Wynne was permitted to present some evidence regarding Peckham's alleged scheme to murder. However, given that some of the excluded evidence would have helped Wynne show that Peckham had (1) suffered a mental breakdown, (2) declined psychologically since that time, (3) allegedly attempted to frame someone else for a crime he had committed in the past, and (4) other evidence tending to substantiate Wynne's defense, its probative value was likely substantial.

[6]A published prior panel decision "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)).