Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Apr 24 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RELFORD GREEN, JR., | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )   No. 84A01-1107-CR-320 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael Rader, Judge
Cause No. 84D05-1103-FD-703

**April 24, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Relford Green ("Green") was convicted in Vigo Superior Court of Class D felony domestic battery and Class A misdemeanor battery. Green appeals and presents five issues, which we restate as:

I. Whether the trial court abused its discretion in excluding evidence Green proffered concerning the victim's bad acts and reputation;

II. Whether the trial court abused its discretion in denying Green's motions for mistrial based on the victim's testimony;

III. Whether the State presented sufficient evidence to support Green's conviction for domestic battery;

IV. Whether the trial court abused its discretion in denying Green's tendered instruction on self-defense; and

V. Whether the trial court's imposition of sentence on both of Green's convictions constitutes impermissible double jeopardy.

We affirm Green's conviction for Class D felony domestic battery but reverse his conviction for Class A misdemeanor battery on double jeopardy grounds and remand with instruction that the trial court vacate the conviction and sentence on this count.

**Facts and Procedural History**

At the time relevant to this appeal, Green lived in Terre Haute, Indiana with Marva Ball ("Ball") and her fifteen-year-old daughter, J.M. Green and Ball were in a romantic relationship and had lived together for approximately five years. On the morning of February 27, 2011, Ball was in the kitchen cooking breakfast when she heard Green yell that someone had taken his wallet. Ball told Green that he had mostly likely mislaid his wallet and that he would find it if he continued to look for it. She also told him to stop accusing others of taking his belongings. As Green searched for his wallet, he angrily picked up items and threw them. Ball again told Green that she did not like being

2

accused of stealing. Green then stated that he found his wallet and that "everything [wa]s okay." Tr. p. 137. Ball replied, "no, it's not," and indicated that she planned on leaving Green. Tr. pp. 137-38. Green then came into the kitchen, smacked Ball in the area of her face and neck, and stated, "I'll show you what I do to bitches like you." Tr. p. 139.

J.M. had been trying to sleep on the couch in the next room when she heard Green and her mother arguing. When she heard Green strike Ball, she came into the kitchen and asked if Green had struck Ball. J.M could see that her mother had a red handprint on her face and had tears in her eyes. Ball told J.M to call the police, and J.M. retrieved her mobile phone to do so. Green grabbed the phone from J.M.'s hand, broke it in half, and threw it aside. Ball and J.M both tried to leave through the front door, but Green pushed J.M. out of the way and grabbed Ball and slammed her to the ground. As Ball got up, Green went into the kitchen and retrieved a knife. Ball followed Green into the kitchen and grabbed a pan that contained hot grease, positioning herself between Green and J.M. thereby allowing J.M. to leave the house safely. Ball threatened to throw the hot pan of grease on Green, but Green knocked the pan out of her hand. Green then backed Ball up to the couch with the knife in his hand. Ball asked him, "Are you . . . really going to do that to me?" Tr. p. 142. Green stated, "no." Id. When Green turned around, Ball fled the home, went to a neighbor's house, and called the police.

The police soon arrived at the scene. One of the responding officers, Terre Haute Police Officer Rex Mix ("Officer Mix"), exited his patrol car and approached the house. As he did, Green came out of the house with a suitcase and spontaneously stated, "[Y]es, this time I did hit her." Tr. p. 191. Green did not claim that Ball had attacked him.

3

On March 3, 2011, the State charged Green with Class A misdemeanor domestic battery against Ball, Class B misdemeanor battery against J.M., Class A misdemeanor interfering with reporting a crime, and Class D felony criminal recklessness. The State also alleged that Green had a prior conviction for domestic battery, which would act to elevate the charge of domestic battery against Ball to a Class D felony. The State later dismissed the charge of criminal recklessness.

A bifurcated trial was held on May 26 and 27, 2011. In the first phase of the trial, the jury found Green guilty of Class A misdemeanor domestic battery, but not guilty of the remaining charges. During the second phase of the trial, the jury found that Green had previously been convicted of domestic battery and was therefore guilty of Class D felony domestic battery. At a sentencing hearing held on June 15, 2011, the trial court sentenced Green to a "merged sentence of 1 year and 3 years on both counts." Appellant's App. p. 11; Sentencing Tr. p. 23-24. The trial court ordered all but 180 days suspended, with credit for ninety days actually served. The court also placed Green on two and one-half years probation. Green now appeals. Additional facts will be provided as necessary.

## I. Exclusion of Evidence

Green first claims that the trial court erred in excluding certain evidence he sought to admit. Questions regarding the admission or exclusion of evidence are within the discretion of the trial judge and are reviewed on appeal only for an abuse of that discretion. Wells v. State, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009), trans. denied. The

4

trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. Id.

The evidence Green sought to admit falls into the following categories: (1) evidence of pending charges against Ball for battery against Green, (2) testimony concerning an incident where Ball attempted to hit Green with a piece of lumber, (3) evidence that Ball, without Green's permission, may have cashed Green's Social Security checks while Green was incarcerated on the instant charges, and (4) evidence regarding Ball's character for truthfulness. Green now claims that, for various reasons, such evidence was admissible and that the trial court erred in excluding such evidence.

A. *Evidence of Victim's Character*

Green's main claim is that the evidence he sought to admit was properly admissible under certain evidentiary rules and that the trial court erred in concluding otherwise. Specifically, he claims that evidence regarding Ball's prior acts of violence toward Green, as indicated by her past behavior and the pending battery charges, supported his claim of self-defense and were properly admissible pursuant to Evidence Rules 404(a) and 608. The first of these rules provides:

> **(a) Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;
>
> (2) <u>Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused</u>, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of witness. Evidence of the character of a witness, as provided in Rules 607, 608 and 609.

Indiana Evidence Rule 404(a) (emphasis added).

As the emphasized portion of this rule demonstrates, evidence of the victim's character may, under certain circumstances, be admitted into evidence by a defendant. Although the general rule is that evidence of a person's character is inadmissible to prove action in conformity therewith on a particular occasion, if a defendant claims that he acted in self-defense in the face of the victim's aggression, he may offer evidence of a pertinent trait of the victim's character. See, e.g., Brooks v. State, 683 N.E.2d 574, 576 (Ind. 1997); Zachary v. State, 888 N.E.2d 343, 347 (Ind. Ct. App. 2008); Brand v. State, 766 N.E.2d 772, 779 (Ind. Ct. App. 2002).

"'Indiana Evidence Rule 405 permits proof of the violent character of the victim by reputation or opinion testimony.'"[1] Price v. State, 765 N.E.2d 1245, 1250 (Ind. 2002) (citing Brooks, 683 N.E.2d at 576). Here, however, Green did not seek to introduce reputation or opinion testimony regarding Ball's violent character. Instead, he sought to introduce evidence regarding specific acts of violence by Ball against Green. Specific

---

[1] Evidence Rule 405 provides in full:

**(a) Reputation or Opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct. Upon reasonable pre-trial notice by the accused of the intention to offer character evidence, the prosecution in a criminal case shall provide the accused with any relevant specific instances of conduct to be used in cross-examination.

**(b) Specific Instances of Conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

Evid. R. 405.

6

instances of conduct are admissible only on cross-examination of a witness who has already given reputation or opinion testimony about a person's character, or in cases in which character or a trait of character of a person is an essential element of the charge, claim, or defense. Brooks, 683 N.E.2d at 577, 577 n.4.

Here, Ball did not testify regarding her character and therefore cross-examination regarding specific acts of conduct was not permissible. See id. at 577 n.4 (concluding that, where prosecution witness offered no character reputation or opinion testimony, she could not be cross-examined as to specific acts).[2] Nor was Ball's character an essential element of Green's claim of self-defense. See id. (victim's character is not an essential element of claim of self-defense).

Although the character of the victim is not an essential element of self-defense, the character of the victim may be pertinent to a claim of self-defense. Id. at 576. Thus, the victim's reputed character, propensity for violence, prior threats and acts, if known by the defendant, may be relevant to the issue of whether a defendant had fear of the victim prior to utilizing force against him. Brand, 766 N.E.2d at 780. Therefore, a defendant may support his claim of self-defense by introducing evidence of matters that would make his fear of the victim reasonable.

Importantly, however, before such evidence may be admitted, the defendant must first introduce "appreciable evidence of the victim's aggression to substantiate the claim of self-defense." Id. (citing Holder v. State, 571 N.E.2d 1250, 1254 (Ind. 1991) ("If the

---

[2] Nor could Green have called Ball in his case-in-chief to inquire into specific acts of conduct, as such is equally forbidden by Evidence Rule 405(a). Brooks, 683 N.E.2d at 577 n.4 (citing 12 R. MILLER, INDIANA PRACTICE § 405.104 at 466 (2d ed. 1995)).

defendant wishes to introduce either type of character evidence, she must first introduce appreciable evidence of the victim's aggression to substantiate the self-defense claim."); see also 12 R. MILLER, INDIANA PRACTICE § 404.106 (3d ed.) ("[t]he requirement in Rule 404(a)(2) that the victim's character trait be 'pertinent' probably preserves earlier Indiana cases that required that some other evidence of the victim's aggression precede the admission of the character evidence in light of the concern that the jury might view the victim's bad character as an excuse for the alleged attack by the accused.").

Here, there was no appreciable evidence that Green acted in self-defense. Instead, the evidence indicates that Green was the initial aggressor. Green accused someone of stealing his wallet and became angry while looking for it. When Green found his wallet, Ball informed him that she still planned on leaving him. Green then smacked Ball and stated, "I'll show you what I do to bitches like you." Tr. p. 139. Green then threw Ball to the ground when she attempted to flee. Only when Green grabbed a knife did Ball attempt to defend herself with a hot frying pan. Thus, there was no appreciable evidence of Ball's aggression toward Green, and any evidence of Ball's violent character was properly excluded by the trial court.[3]

---

[3] Green also claims that the trial court's exclusion of evidence provided the jury with inaccurate information. He specifically complains that Ball was allowed to testify that she had one charge pending against her involving Green. Green claims that Ball was actually facing two pending charges for battery against Green. Green also complains that the trial court did not allow Ball to testify regarding the fact that the pending charges involved battery. But Green's argument presumes that evidence of Ball's pending charges was properly admitted at all. As discussed above, evidence of Ball's violent behavior was properly excluded.

*B. Evidence of Motive or Plan*

Green also claims that evidence of Ball's prior violence toward Green, including the pending charges against her, and her alleged check fraud was admissible to show Ball's motive and/or plan. Pursuant to Evidence Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." But such evidence may be admissible for other purposes, "such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Id.

In Garland v. State, 788 N.E.2d 425 (Ind. 2003), our supreme court addressed the issue of applying Evidence Rule 404(b) to those other than the defendant. The traditional purpose of Evidence Rule 404(b) was to protect a defendant from being convicted based on unrelated prior bad acts, and early efforts to use this rule to exclude evidence about the prior bad acts of non-defendants were rejected. Id. at 428-29 (citing United States v. Morano, 697 F.2d 923, 926 (11th Cir. 1983)); Wells, 904 N.E.2d at 270. Courts then began to apply what was termed "reverse 404(b)" to the bad acts of non-parties where evidence of someone else's conduct tended to negate the defendant's guilt. Garland, 788 N.E.2d at 429. Disagreeing with both of these approaches, our supreme court wrote, "the cleanest way of thinking of 404(b) in this context is a little different." Id. The court explained: "First, the text of Rule 404(b) is such that it governs evidence about acts by defendants, and non-defendants. Second, the rule acts as an appropriate restraint on admissibility of evidence about events or acts that are by definition largely extraneous to those for which a defendant is on trial." Id. However, for evidence about the bad acts of

9

a non-defendant to be admissible, one of the exceptions of Rule 404(b) must apply. Id. at 430; Wells, 904 N.E.2d at 270.

Green claims that evidence of Ball's prior violence and alleged check fraud were admissible to show her motive. That is, he claims that she is lying about what happened in the present case in order to avoid another battery charge being filed against her. This, of course, assumes that Ball was the initial aggressor in this case. As explained above, Green proffered no evidence suggesting that this was the case here. Green also claims that Ball lied about the present case so that she could gain an "advantage" in the pending cases against her for battering Green. Green fails to explain precisely how accusing Green of battery would help Ball in her pending claims.[4]

Green also complains that the trial court erred in excluding evidence regarding Ball's alleged check fraud. In support of this claim, Green refers only to Ball's response to Green's questioning on cross-examination in which Green asked Ball if she had ever tried to cash Green's Social Security checks while he was incarcerated. Ball responded that she had not tried to cash the checks and instead had sent Green's checks to the county jail where Green was incarcerated. Tr. p. 184. The State objected to this line of questioning, and the trial court sustained the objection. On appeal, Green admits that the record "does not reveal the extent of Green's check fraud," but states that "Green has

---

[4] In fact, evidence of Green's subsequent battery of Ball would appear to be irrelevant to whether Ball battered Green. Even if Ball were to claim self-defense in her prosecutions for her alleged prior battery of Green, Green's subsequent behavior would be irrelevant. See Welch v. State, 828 N.E.2d 433, 437-38 (Ind. Ct. App. 2005) (holding that evidence of battery victim's aggressive behavior which occurred after the stabbing for which the defendant was on trial could not be relevant to the defendant's state of mind or his reasonable fear at the time of the battery).

confirmed with the Social Security Administration that his Social Security checks were cashed during his incarceration on the present charges and . . . has reported that activity to the Vigo County Prosecutor's Office." Appellant's Br. pp. 21-22. It is well settled that we cannot consider matters outside the record on appeal. Jones v. State, 775 N.E.2d 322, 335 (Ind. Ct. App. 2002). Thus, the only evidence in the record reveals that Ball did not steal and/or cash Green's checks, and Green proffered no evidence to indicate otherwise. Unverified claims in an appellate brief are no substitute for evidence.[5]

C. *Evidence of Bias*

Green also claims that evidence of the pending battery charges against Ball were admissible as evidence of bias. Specifically, he claims that Ball was angry at Green for accusing her of battery and that she had a motive to lie about the current case. But the trial court did permit Green to inquire about the fact that Ball had charges pending against her with regard to Green. Tr. pp. 170, 179. We find no error in the trial court limiting Green's questioning of Ball's possible bias. Otherwise, Green could skirt the general rule that Ball's prior behavior was inadmissible under the guise of evidence of bias. The trial court's solution was to strike a delicate balance—permit Green to question Ball about the fact that she had charges pending against her involving Green, but not permit Green to delve into the details of the pending charges. See Evidence Rule 403 (providing that even relevant evidence may be excluded if its probative value is

---

[5] Even if Ball did indeed cash Green's checks as claimed, such allegations are for the police and prosecutor to investigate.

11

substantially outweighed by the danger of unfair prejudice). We cannot say that the trial court's ruling on this matter amounted to an abuse of discretion.

D. *Reputation for Truthfulness*

Green also claims that the trial court erred in sustaining the State's objection to Green's questions to Officer Mix regarding Ball's reputation for truthfulness. Evidence Rule 606(a) provides that a witnesses credibility may be attacked by "evidence in the form of opinion or reputation," but such evidence is subject to certain limitations: "(1) the evidence may refer only to character for truthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." Thus it would appear that Green is correct that, if Officer Mix knew of Ball's character for truthfulness, he should have been allowed to testify that Ball had a reputation for being untruthful. See Green v. State, 756 N.E.2d 496, 498 (Ind. 2001) (noting that defendant could have properly called a witness to provide testimony attacking witnesses truthfulness through opinion or reputation evidence).

Still, Green did present the testimony of two other witnesses who explained that Ball had a reputation for being untruthful. Any error in the trial court's decision to exclude Officer Mix's testimony to that effect was therefore harmless. Evidentiary error is harmless if the evidence was merely cumulative of other admitted evidence. See Nunley v. State, 916 N.E.2d 712, 719 (Ind. Ct. App. 2009), trans. denied. Green argues, however, that the testimony of the police officer would have been much more persuasive

12

than that presented by Green's other witnesses and that the exclusion of this evidence was therefore not harmless. We disagree.

Errors in the admission of evidence are to be disregarded as harmless unless they affect the defendant's substantial rights. Rogers v. State, 897 N.E.2d 955, 961 (Ind. Ct. App. 2008), trans. denied (citing Ind. Evidence Rule 103(a)). "An error will be deemed harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." Id. We have also explained that evidentiary error is harmless if the conviction is supported by substantial evidence of guilt such as to satisfy the court on appeal that there is no substantial likelihood that the error contributed to the conviction. Henson v. State, 790 N.E.2d 524, 534 (Ind. Ct. App. 2003).

Here, the evidence against Green was rather strong: Ball testified that Green slapped her, Ball's daughter heard the blow, the officers saw a red hand mark on Ball's face and neck, and Green spontaneously admitted to the responding officer that he hit Ball. There was no evidence that Ball acted in any manner that would make him reasonably fear for his safety. Instead, the evidence demonstrates that Green was the initial aggressor. Under these facts and circumstances, we conclude that Green's conviction is supported by substantial evidence of guilt such that there is no substantial likelihood that the exclusion of Officer Mix's cumulative testimony regarding Ball's reputation for truthfulness contributed to Green's conviction.

E. *Evidence of Victim's Propensity for Violence*

Green also claims that Ball lied when she claimed she had never been violent toward Green even though she was facing pending charges for battering Green. Again, Green claims that this means he should have been allowed to present evidence regarding Ball's violent character. But Ball denied being violent with Green only upon cross-examination by Green's trial counsel. Evidence elicited on cross-examination generally cannot serve to "open the door" to otherwise inadmissible evidence. Wright v. State, 836 N.E.2d 283, 291 (Ind. Ct. App. 2005), reh'g granted with instructions, 845 N.E.2d 263 (2006), trans. denied. As explained in Kien v. State, 782 N.E.2d 398, 409 (Ind. Ct. App. 2003), trans. denied, although a party may inquire into a collateral matter on cross-examination, "the questioner is bound by the answer received and may not impeach the witness with extrinsic evidence unless the evidence would be independently admissible." Thus, the fact that Ball denied being violent with Green did not open the door to otherwise inadmissible testimony regarding Ball's past violence toward Green.

Moreover, the essence of Green's argument is that evidence regarding Ball's "propensity for violence and her frequent attacks on Green made more likely Green's claim that he used reasonable force against Ball to protect himself from what he reasonably believed to be the imminent use of unlawful force by Ball." Appellant's Br. p. 21. In other words, Green wanted the jury to conclude that Ball had acted violently before and was therefore likely to have acted violently in the present case. This is precisely the "forbidden inference" that Evidence Rule 404(b) was designed to protect against. See Wells, 904 N.E.2d at 270 (concluding that trial court properly excluded

14

evidence of homicide victim's prior violent behavior under Evidence Rule 404(b) where it was offered to show that victim's prior behavior made him more likely to have behaved similarly when defendant stabbed him).

F. *Sixth Amendment*

Lastly, Green claims that the trial court's evidentiary rulings denied him the right to confront witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution. Our supreme court has noted that the constraints of evidentiary rules "must sometimes yield to a defendant's right of cross-examination." State v. Walton, 715 N.E.2d 824, 827 (Ind. 1999). Green notes that even though Evidence Rule 412 prohibits certain types of impeachment of the victims of sex crimes, our courts have recognized an exception to this rule when a defendant seeks to introduce evidence of a prior false accusation of rape. See, e.g., Fugett v. State, 812 N.E.2d 846, 849 (Ind. Ct. App. 2004). Green claims that a similar exception should be allowed in the present case.

As noted by the State, however, the Sixth Amendment right to cross-examination is not unlimited and does not prohibit a trial court from imposing certain limits on cross-examination. Delaware v. Van Arsdall, 415 U.S. 308, 315-16 (1974). "The Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). Here, we cannot say that the application of the rules of evidence constitutes a denial of the right to cross-examine the victim. Green was able to cross-examine Ball and even was permitted to present evidence that she had charges pending against her. Had Green presented some evidence

15

that he had acted in self-defense, he may have even been able to present evidence regarding Ball's prior violence. But the fact that he failed to meet this threshold requirement does not mean that he was denied the right to cross-examination.

In summary, the trial court did not err in excluding the evidence of Ball's character and prior acts that Green sought to admit. And to the extent that the trial court did err in preventing Officer Mix from testifying regarding Ball's reputation for truthfulness, such error was harmless.

## II. Mistrial

Green next claims that the trial court abused its discretion in overruling his various motions for mistrial as a result of certain portions of Balls' testimony. Specifically, Green complains of the following statements by Ball. First, when asked by the prosecution if she and Green lived together as husband and wife, Ball responded, "If that's what you want to call it, more like terrorism." Tr. p. 135. Later, Ball stated that she had informed Green the night before the battery that she was leaving him. When the State asked her to repeat her statement, Ball instead stated, "My daughter has been way too much drama [sic]. I mean he has had her beat up." Tr. p. 137. Ball later stated that she was nervous because Green was looking at her in the courtroom while she testified. When describing how her daughter screamed at Green after he struck her, Ball added, "It freaks [J.M.] out every time . . . you know . .. she [has] been traumatized." Tr. p. 139. On cross-examination by Green's counsel, Ball claimed that Green was attempting to get her kicked out of their home. And finally, Ball indicated that she wanted Green to leave

16

their home "instead of bringing a bunch of kids around and smoking pot, crack[.]" Tr. p. 183.

A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. Henson v. State, 790 N.E.2d 524, 535 (Ind. Ct. App. 2003). The decision to grant or deny a mistrial is within the trial court's discretion, and we will reverse the trial court only for an abuse of that discretion. Id. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court. Id. We accord the trial court's decision great deference on appeal, as the trial court is in the best position to gauge the circumstances and the probable impact on the jury. Id. When determining whether a mistrial is warranted, we consider whether the defendant was placed in a position of "grave peril" to which he should not have been subjected. Id. The gravity of the peril is determined by the probable persuasive effect of the matter complained of on the jury's decision. Id.

Here, when Green objected to Ball's unresponsive comments, the trial court immediately struck that testimony and admonished the jury to disregard it. "A timely and accurate admonition is presumed to cure any error in the admission of evidence." Banks v. State, 761 N.E.2d 403, 405 (Ind. 2002) (quoting Heavrin v. State, 675 N.E.2d 1075, 1084 (Ind. 1996)); see also Carter v. State, 686 N.E.2d 834, 836 (Ind. 1997) (noting that a prompt admonishment to the jury to disregard the improper testimony is usually enough to avoid a mistrial). Here, the trial court repeatedly admonished the jury to ignore Ball's improper statements, and we are unwilling to second-guess the trial court's conclusion that the admonishments cured any error and that a mistrial was unwarranted.

17

### III. Sufficiency of the Evidence

Green next claims that the evidence was insufficient to support his convictions because, he insists, he acted in self-defense. The standard for reviewing a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same standard used for any claim of insufficient evidence. Wallace v. State, 725 N.E.2d 837, 840 (Ind. 2000). We neither reweigh the evidence nor judge the credibility of witnesses. Id. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, the judgment will not be disturbed. Id.

A valid claim of self-defense is legal justification for an otherwise criminal act. Id. To prevail on his self-defense claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) acted without fault; and (3) was in reasonable fear or apprehension of bodily harm. Coleman v. State, 946 N.E.2d 1160, 1165 (Ind. 2011); Henson v. State, 786 N.E.2d 274, 277 (Ind. 2003); see also Ind. Code. § 35-41-3-2 (2006). When self-defense is raised *and finds support in the evidence*, the State must negate at least one of the necessary elements of a self-defense claim. Wilson v. State, 770 N.E.2d 799, 800 (Ind. 2002). The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief. Green v. State, 870 N.E.2d 560, 564 (Ind. Ct. App. 2007), trans. denied. Whether the State has met its burden is a question of fact for the trier of fact. Id.

Here, the evidence most favorable to the verdict reveals that Green was agitated because he thought someone had stolen his wallet. When Ball informed him that she

18

planned to leave him, Green struck her and said, "I'll show you what I do to bitches like you." Tr. p. 139. Ball's daughter, J.M., heard Green strike Ball and saw the red mark on her face where Green had struck her. She also witnessed Green pick Ball up and throw her on the ground near the doorway when Ball attempted to flee. And when Officer Mix arrived, Green spontaneously admitted to the officer that he had hit Ball. Green did not claim to Officer Mix that he had been acting in self-defense, nor did he appear to have been injured. From this evidence, the jury could reasonably conclude that Green acted as the initial aggressor and was therefore not acting in self-defense. We therefore conclude that the State presented sufficient evidence to support Green's convictions.

## IV. Jury Instruction

Green next claims that the trial court erred in refusing his tendered instruction regarding self-defense. The manner of instructing the jury lies within the discretion of the trial court, and we will reverse the trial court only upon an abuse of that discretion. Smith v. State, 777 N.E.2d 32, 34 (Ind. Ct. App. 2002). An abuse of discretion occurs if the instructions, considered as a whole and in reference to each other, mislead the jury as to the applicable law. Id. In reviewing a trial court's decision to give or refuse a tendered jury instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. Id.

The parties here do not dispute that Green's proposed jury instruction was a correct statement of law or that there was no other instruction covering the substance of

19

Green's proposed instruction. Instead, they argue over whether there was any evidence in the record to support the giving of the instruction. We agree with the State that there was no evidence in the record supporting Green's claim of self-defense.

The evidence in the record demonstrates that Green himself initiated the attack on Ball. Green became agitated after he had lost his wallet and accused others of taking it. After Green found his wallet, Ball informed him that she planned to leave him. Green then struck Ball and stated, "I'll show you what I do to bitches like you." Tr. p. 139. Ball's daughter heard Green slap Ball and saw the mark on Ball's face. When Ball tried to flee, Green grabbed her and threw her to the ground. And when the police arrived, Green admitted that he had struck Ball. There was no evidence that Ball was the initial aggressor; instead, the evidence was that Green was the initial aggressor and that Ball grabbed a frying pan only after Green came at her with a knife.

On appeal, Green claims that evidence of Ball's prior violent behavior towards him supports his claim of self-defense. But as explained above, such evidence is only admissible if a defendant presents some appreciable evidence that he acted in self-defense. And here, Green presented no such evidence. Instead, he attempted to boot-strap his self-defense claim by presenting evidence that Ball had been violent in the past and that she was therefore more likely to have acted violently in the instant case. As explained above, the trial court was within its discretion to exclude evidence of Ball's character. Thus, the evidence indicates that Green was the initial aggressor, and there was no appreciable evidence that Green acted in self-defense. The trial court therefore properly refused to give Green's tendered instruction regarding self-defense. See Henson v. State, 786

20

N.E.2d 274, 277 (Ind. 2003) (defendant was not entitled to self-defense instruction where the record indicated that he "provoked, instigated and willingly participated in the violence.").

## V. Sentencing

Lastly, Green claims that the trial court erred in imposing sentence on both his conviction for Class D felony domestic battery and Class A misdemeanor battery. Both of these convictions stem from Green's same act of battery against Ball. As the State admits, the Class D felony conviction was simply an enhancement of the Class A misdemeanor conviction based upon Green's prior conviction for domestic battery. Although the trial court agreed with both the defense and the prosecution that the two convictions should "merge" for purposes of sentencing, the court nevertheless imposed sentences on both convictions.

Green claims, and the State concedes, that this was improper. We agree. See Guyton v. State, 771 N.E.2d 1141, 1143 (Ind. 2002) (holding that "[c]onviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished" constitutes impermissible double jeopardy). We therefore reverse Green's conviction for Class A misdemeanor battery and remand with instructions that the trial court vacate Green's conviction and sentence on this count. See Williams v. State, 892 N.E.2d 666, 669 (Ind. Ct. App. 2008) (concluding that appropriate remedy for double jeopardy violation was vacating the conviction and sentence with the less severe penal consequences) (citing Richardson v. State, 717 N.E.2d 32, 55 (Ind. 1999)).

21

## Conclusion

The trial court did not abuse its discretion in excluding evidence regarding Ball's prior behavior, and any error in the exclusion of the police officer's testimony regarding Ball's reputation for truthfulness was harmless. The trial court did not abuse its discretion in denying Green's motions for mistrial because the trial court properly admonished the jury to disregard Ball's improper statements. The evidence was sufficient to sustain Green's convictions regardless of his claim of self-defense, and the trial court did not abuse its discretion in rejecting Green's tendered self-defense instruction. But the trial court did err in sentencing Green on both of his convictions, and we therefore reverse his conviction for Class A misdemeanor battery and remand with instructions that the trial court vacate the conviction and sentence thereon.

Affirmed in part, reversed in part, and remanded with instructions.

FRIEDLANDER, J., and RILEY, J., concur.