NOT RECOMMENDED FOR PUBLICATION
File Name: 11a0611n.06

No. 09-1484

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| JOHNELL ALLEN, | ) | |
| | ) | **FILED** |
| Petitioner-Appellant, | ) | **Aug 24, 2011** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CAROL HOWES, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before: SILER, COLE and KETHLEDGE, Circuit Judges.

**SILER, Circuit Judge.** Johnell Allen appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition. For the following reasons, we **AFFIRM**.

**BACKGROUND**

Sharon Hunter and her boyfriend John McMullen began arguing at Hunter's apartment in the presence of Hunter's friend, Wendy Shepherd, and the two infant children Hunter shared with Allen, her ex-boyfriend. After watching McMullen push Hunter down, Shepherd fled the apartment. She encountered Allen and Douglas Hodo and told both what happened. Allen obtained a shotgun and went to Hunter's apartment where he shot and killed McMullen after finding him in an upstairs bedroom closet.

At Allen's trial, the Michigan state court excluded two references to Allen's knowledge of McMullen's violent behavior before the day of the shooting. Hunter and Allen both testified that

she told him McMullen physically abused her many times in the past. The prosecution objected to both references as hearsay, and the trial court excluded the testimony despite Allen's argument that his knowledge of McMullen's past violence demonstrated his state of mind at the time he shot McMullen. In response, Allen proffered that Hunter told him McMullen had previously threatened to kill her and the children. With this in mind, Allen testified that he brought the shotgun to Hunter's apartment for protection and shot McMullen accidentally. The dissent suggests that Allen's testimony shows that he was concerned for his *children's* safety. However, as the district court observed, Allen testified that he took the gun into the house because he was "scared that something had happened bad." He did shout at others that McMullen "was messing with the kids," but he never testified that was the reason why he took the shotgun into the residence.

Even defense counsel did not emphasize in his closing argument that Allen brought the shotgun to the apartment because of some danger to the children even though Shepherd had told Allen that McMullen "was messing with the kids." Instead, defense counsel said that when Allen tried to call the residence, "It was then that he got the feeling that something bad had happened. . . . knowing that his children were in that apartment, having heard that Wendy Shepherd indicated she was afraid that the decedent was going to beat up Sharon?" Counsel went on to argue that Allen "took the gun with him in the event he concluded probably something terrible has happened is justified. Either to protect himself from the man he had been told was a violent person or just to frighten that person out of that residence." Thus, there was no argument that Allen brought his weapon to the house to protect the children. There was only one remark that the children were there, but counsel did not emphasize that was the reason why Allen had the shotgun. His theory in the case

was that he brought the weapon to protect himself from McMullen or to frighten McMullen out of the house.

Allen was convicted of second degree murder and possession of a firearm in the commission of a felony. The Michigan Court of Appeals affirmed his conviction, *see People v. Allen*, No. 136139 (Mich. Ct. App. June 2, 1993), and he failed to timely appeal to the Michigan Supreme Court. Allen successfully obtained Michigan post-conviction relief, but the Michigan Court of Appeals eventually reversed the trial court's grant of relief, holding Allen procedurally defaulted his claims under Michigan Court Rule 6.508(D)(3), *see People v. Allen*, No. 249788, 2005 WL 1106498 (Mich. Ct. App. May 10, 2005), and the Michigan Supreme Court affirmed in *People v. Allen*, 706 N.W.2d 15 (Mich. 2005). Allen unsuccessfully petitioned a federal district court for habeas relief under 28 U.S.C. § 2254, *see Allen v. Howes*, 599 F. Supp. 2d 857 (E.D. Mich. 2009), and now appeals.

## DISCUSSION

We review the district court's legal conclusions *de novo* and its factual findings under a clearly erroneous standard. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 836 (6th Cir. 2010) (citation and quotation marks omitted). The government argues Allen procedurally defaulted his habeas claims by failing to raise them on direct appeal. We assume, without deciding, that his claims are not defaulted and address their merits. Because the Michigan courts denied Allen post-conviction relief

on procedural grounds, we review the merits of Allen's claims de novo. *Nields v. Bradshaw*, 482 F.3d 442, 449–50 (6th Cir. 2007).[1]

In his first claim for habeas relief, Allen argues he was denied the right to present a defense by the trial court's erroneous exclusion of evidence of McMullen's past violence. Due process guarantees a criminal defendant the meaningful opportunity to present a complete defense, "including the right to present relevant evidence." *Varner v. Stovall*, 500 F.3d 491, 499 (6th Cir. 2007) (internal citation and quotation marks omitted). A trial court's mere exclusion of relevant evidence only violates this guarantee "where it has infringed upon a weighty interest of the accused," *United States v. Scheffer*, 523 U.S. 303, 308 (1998), like the interest in "offering the accused's own testimony" and in "using the only available means of addressing a relevant issue," *Ferensic v. Birkett*, 501 F.3d 469, 478–79 (6th Cir. 2007) (internal citation omitted). These interests are only infringed where the exclusion of evidence "significantly undermine[s] fundamental elements of the defendant's defense." *Scheffer*, 523 U.S. at 315.

Allen argues that the weighty interest infringed by the trial court's exclusion of evidence was his ability to prove his state of mind at the time of the murder—specifically, his interest in showing that he carried a shotgun to Hunter's apartment, not because he intended to murder McMullen, but

---

[1]The dissent suggests that perhaps the Michigan Court of Appeals adjudicated his ineffectiveness claim on the merits. If so, then that court has already held that the evidence was cumulative and the failure to admit the evidence by the trial court did not result in prejudice to Allen. Admittedly, the dissent states that the Michigan court used the wrong criteria, following *People v. Reed*, 535 N.W. 2d 496 (Mich. 1995), rather than the authority from *Smith v. Robbins*, 528 U.S. 259, 285 (2000). However, if the evidence was cumulative, it is difficult to see how there could be a reasonable probability that Allen could have prevailed on his appeal. *Id.*

because he feared for his safety. Even assuming such exclusion was erroneous, because Allen established his knowledge of *both* McMullen's past and present violence—evidence only minimally probative to his defense—the trial court's rulings did not deprive him of the "right to present a defense."

Allen demonstrated at trial that he knew McMullen had been violent on the day of the shooting. Shepherd saw McMullen assault Hunter and she, Hodo and Allen all testified that she told Allen what she saw. Despite the trial court's rulings, Allen also demonstrated that he knew McMullen was violent. Hodo testified he told Allen that McMullen had beaten Hunter several times in the past. Hunter also said "yes" when the prosecution asked her whether she "testified on cross examination that [she] had told Johnell Allen in the past that [she] had been physically assaulted by John McMullen." While Allen argues that the jury never heard the most impactful evidence—McMullen's death threats toward Hunter and his children—where a trial court's exclusion of evidence does not bar a defendant "from introducing *other* evidence to support [his particular] defense," the right to present a defense is not violated. *Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (internal citation omitted).

Nonetheless, McMullen's death threats were not especially probative of Allen's defense. Allen did not assert self-defense or the defense of others as an explanation for shooting McMullen. Instead, he argues he shot McMullen accidentally. That Allen knew McMullen had threatened to kill his ex-girlfriend does little to show his shooting McMullen was accidental. Such evidence could just as easily support the theory, evidently adopted by the jury, that Allen brought a loaded shotgun to Hunter's apartment out of anger over McMullen's treatment of his ex-girlfriend and children. As

a result, because the trial court's exclusion of some evidence showing Allen knew of McMullen's past violence did not significantly undermine his defense of accident, Allen's right to present a defense was not violated.

In his second claim for habeas relief, Allen argues he received ineffective assistance of appellate counsel because his counsel failed to raise his "right to present a defense" claim on direct appeal of his conviction. Appellate counsel cannot be ineffective "for a failure to raise an issue that lacks merit." *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 674 (6th Cir. 2001)). Because Allen's "right to present a defense" claim is indeed without merit, so too is his ineffective assistance of appellate counsel claim.

To the extent Allen rests this claim on his counsel's failure to argue on direct appeal that the trial court's exclusion of this "state of mind" evidence violated Michigan evidentiary law, it is similarly unavailing. Even assuming it was objectively unreasonable not to raise the trial court's supposed violation of state law as an issue, Allen cannot show a reasonable probability that, but for his counsel's error, he would have prevailed on his appeal. *Smith v. Robbins*, 528 U.S. at 285–86. Under Michigan law at the time of his direct appeal, an evidentiary error does not provide grounds to disturb a jury's verdict when it is clear that the error did not prejudice the defendant. *Michigan v. Lee*, 450 N.W.2d 883, 895 (Mich. 1988) (citing Michigan Court Rule 2.613(A)). We find, as did the district court and Michigan Court of Appeals, that the excluded evidence was cumulative and that the trial court's exclusion of it clearly did not prejudice Allen at trial. *See Dunn v. Nundkumar*, 463 N.W.2d 435, 437 (Mich. Ct. App. 1990) (under *Lee*, erroneous exclusion of evidence was harmless where evidence was cumulative). Thus, because this excluded evidence would have given the

Michigan Court of Appeals no reason to reverse his conviction, Allen does not demonstrate the

prejudice needed to establish he received ineffective assistance of appellate counsel.

**AFFIRMED**.

**COLE, Circuit Judge, concurring in part and dissenting in part.**  I agree with the majority's disposition of Allen's right to present a defense claim.  I write separately because I disagree with the majority's rejection of Allen's ineffective assistance of appellate counsel claim based on counsel's failure to appeal the erroneous exclusion of evidence.  Allen's testimony clarifies that he was concerned about his seventeen-month-old twins' safety, and the jury could have believed that this concern, not an intent to kill McMullen, motivated Allen's actions on the day McMullen was killed.  The trial court, however, improperly excluded the only evidence Allen offered to show he believed McMullen posed a serious danger to the twins: McMullen's history of violence towards the children.  Allen's appellate counsel failed to argue that the trial court's evidentiary errors affected the outcome of the case.  Unlike the majority, I think that Allen's counsel's failure constituted ineffective assistance, because there is a reasonable probability that the Michigan Court of Appeals would have granted Allen a new trial had Allen's counsel appealed the exclusion.  I would therefore **REVERSE** the district court's judgment in part and **GRANT** Allen's petition.

As an initial matter, the majority holds that the Michigan Court of Appeals denied Allen's claims on procedural grounds, and then "assume[s], without deciding, that his claims are not defaulted."  Slip Op. at 3.  However, we need not assume that Allen's ineffectiveness claim is not defaulted, since Allen advanced this claim below and thus did not default it.  (*See* Allen Br. to the Michigan Court of Appeals ("Allen Collateral Appeal Br."), Dist. Ct. Docket No. 25, at 9-21.)  And, though it is unclear whether the Michigan Court of Appeals adjudicated his ineffectiveness claim on the merits, *see People v. Allen*, No. 249788, 2005 WL 1106498 (Mich. Ct. App. May 10, 2005), at *2, to the extent it did so, its adjudication was contrary to clearly established Supreme Court

precedent. This is so because the Michigan Court of Appeals never stated the rule it applied to Allen's ineffectiveness claim, and the only authority it cited, *People v. Reed*, 535 N.W.2d 496 (Mich. 1995), added an additional element to the two-pronged test from *Strickland v. Washington*, 466 U.S. 668 (1984): whether the outcome was "fundamentally unfair or unreliable." *Reed*, 535 N.W.2d at 509 n.21 (plurality opinion). The Supreme Court has held that an identical misunderstanding of its ineffectiveness jurisprudence was contrary to clearly established federal law. *Williams v. Taylor*, 529 U.S. 362, 393 (2000). Thus, the Michigan Court of Appeals' decision was contrary to clearly established Supreme Court precedent, and our review of Allen's ineffectiveness claim is de novo. *Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006).

Allen claims that his counsel was ineffective because he failed to argue on direct appeal that the trial court's evidentiary exclusions affected the trial's outcome. To show that his appellate counsel was ineffective, Allen must establish that: (1) his counsel acted unreasonably by failing to make the evidentiary argument—an inquiry that depends largely on whether an omitted argument was "significant and obvious" and "clearly stronger than those presented," *see, e.g.*, *Matthews v. Parker*, --- F.3d ----, 2011 WL 2518895, at *31-32 (6th Cir. 2011) (citing *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999)); and (2) there is "a reasonable probability that, but for his counsel's unreasonable failure [to make the evidentiary argument], he would have prevailed on his appeal," *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Before addressing Allen's claims, I feel it necessary to clarify the relevant portions of the record. The majority correctly states that Allen testified he brought the shotgun to Hunter's apartment for protection. Slip Op. at 2. But the majority misunderstands whom Allen purportedly

brought the shotgun to protect. While the majority suggests Allen claimed at trial that he brought the shotgun "because he feared for his safety," *id.* at 5, Allen's testimony makes clear that he was actually concerned for *his children's* safety. Allen went to confront McMullen because Shepherd told him that McMullen "was messing with the kids." (TT Vol. IV, Dist. Ct. Docket No. 15, at 37; *see also* TT Vol. III, Dist. Ct. Docket No. 13, at 14 (Allen's cousin Hodo's testimony on the same point).) Allen testified that when he arrived at Hunter's apartment, he loudly announced his arrival by shouting at Hunter, "why is he messing with my kids." (TT Vol. IV, Dist. Ct. Docket No. 15, at 42.) Then, after finding McMullen, Allen berated McMullen for several minutes solely about McMullen's abuse of the twins. (*Id*. at 45-47.)

However, the jury never heard the most significant evidence suggesting that Allen should be concerned about his children's safety: Allen's testimony that Hunter told him McMullen had threatened to kill the twins, and that McMullen had actually abused the twins in the past—specifically, that McMullen had "pinned . . . [Allen's] babies up." (TT Vol. IV, Dist. Ct. Docket No. 15, at 27.) Without this foundation, trial counsel could not focus his closing argument on this explanation for Allen's intent, so counsel had to direct his argument elsewhere.

Given these facts, I would hold that the evidentiary argument was significant and obvious, as well as clearly stronger than those Allen's appellate counsel presented, and that there is a reasonable probability Allen would have won on appeal had the argument been made. First, the argument was obvious. Allen's proffered testimony was excluded as hearsay. Hearsay, in Michigan, is defined as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Mich. R. Evid. 801(c). Allen was not offering Hunter's out-of-court statements to prove the truth

of what those statements contained, but to prove that, true or not, they caused him to fear for his children. Allen's counsel explained this and forcefully objected to the trial court's rulings at the trial. (TT Vol. IV, Dist. Ct. Docket No. 15, at 24-33.) No competent attorney could read the transcript and miss the trial court's elementary error.

The error was also significant. Allen's explanation for bringing a shotgun to his ex-girlfriend's apartment was that he feared for his children's safety. But due to the trial court's erroneous exclusions, the jury heard no evidence suggesting that Allen had any basis for such a fear. Instead, the jury was left to believe that, after hearing merely that McMullen was "messing with" Allen's children, Allen decided to confront McMullen with a shotgun. Any competent appellate counsel would perceive that the trial court's rulings significantly colored the jury's view of the evidence.

Furthermore, the evidentiary argument was "clearly stronger" than those Allen's appellate counsel presented. Allen made six arguments on direct appeal, and all were meritless. First, Allen advanced a *Batson* claim on the ground that the prosecutor struck two black jurors. (Allen Br. to the Michigan Court of Appeals ("Allen Direct Appeal Br."), Dist. Ct. Docket No. 21, at 10.) However, the prosecutor struck several white jurors, accepted one black juror, and articulated satisfactory reasons for its peremptory objections. *See Batson v. Kentucky*, 476 U.S. 79, 93-94 (1986) (requiring a greater showing to establish prejudice); TT Vol. I, Dist. Ct. Docket No. 12, at 162-63; TT Vol. IV, Dist. Ct. Docket No. 15, at 193-96. Second, Allen argued that the trial court should have granted his motion for a directed verdict as to first-degree murder because no evidence in the record supported a finding of premeditation, (Allen Direct Appeal Br., Dist. Ct. Docket No. 21, at 15), but

the jury could have inferred premeditation from Allen's trip home to get his gun and the twenty to forty-five minutes that elapsed between Allen's conversation with Shepherd and McMullen's shooting, (TT Vol. III, Dist. Ct. Docket No. 14, at 63-64). *See People v. Gonzales*, 444 N.W.2d 228, 231 (Mich. Ct. App. 1989). Third, Allen argued that his counsel was ineffective for failing to request an instruction on careless use of a firearm with death resulting. (Allen Direct Appeal Br., Dist. Ct. Docket No. 21, at 19.) Yet the jury was instructed on voluntary or involuntary manslaughter, and chose instead to find Allen guilty of second degree murder. (*See* TT Vol. IV, Dist. Ct. Docket No. 15, at 168-69.) Given that the jury declined to find Allen guilty of manslaughter rather than murder, the failure to provide the even lesser instruction regarding careless use of a firearm with death resulting did not affect the outcome. *See People v. Chamblis*, 236 N.W.2d 473, 477-78 & n.5 (Mich. 1975), *overruled on other grounds by People v. Cornell*, 646 N.W.2d 127 (Mich. 2002).

Fourth, Allen argued that the prosecution made prejudicial remarks during summation. (Allen Direct Appeal Br., Dist. Ct. Docket No. 21, at 25.) Allen's counsel, however, never objected to any of these remarks, (*People v. Allen*, No. 136139, at *1 (Mich. Ct. App. June 2, 1993), *available at* Dist. Ct. Docket No. 21, at 1-2), and, in any case, none of them was prejudicial in light of the curative instructions to the jury, *see People v. Malone*, 482 N..2d 470, 472 (Mich. Ct. App. 1992). Fifth, Allen claimed he was coerced into pleading guilty to a habitual-offender charge because the trial court refused to take the time needed to track down a plea transcript from a prior conviction. (Allen Direct Appeal Br., Dist. Ct. Docket No. 21, at 28.) Nonetheless, he maintained the ability to subsequently challenge the plea based on the plea transcript but never did so; thus, he cannot

establish that, but for the coerced plea, he might have been found innocent of the habitual offender charge. *Cf. People v. Lawton*, 492 N.W.2d 810, 814 (Mich. Ct. App. 1992). Sixth, Allen contended that his indeterminate sentence of thirty to sixty years of imprisonment deviated substantially from the Michigan sentencing guideline range of ten to twenty-five years. (Allen Direct Appeal Br., Dist. Ct. Docket No. 21, at 31.) However, at the time, the guidelines did not apply to habitual offenders like Allen, *see People v. Edgett*, 560 N.W. 2d 360, 363 (Mich. Ct. App. 1996); *People v. Strickland*, 448 N.W.2d 848, 848 (Mich. Ct. App. 1989), and they only set a sentence's minimum, not both the minimum and maximum, *see People v. Frank*, 400 N.W.2d 718, 719 (Mich. Ct. App. 1986). In short, all of the six arguments Allen's counsel made on direct appeal were much weaker than the significant and obvious evidentiary argument Allen's appellate counsel failed to make. Allen's appellate counsel's performance was thus, as the district court correctly held, deficient.

Finally, counsel's failure to make the evidentiary argument prejudiced Allen's appeal. To show prejudice, Allen must show that there is a reasonable probability that he would have prevailed on appeal if not for his counsel's deficient performance. *Smith*, 528 U.S. at 285. To have prevailed on appeal at the time, Allen would have to show that it was not "clear that the error[s] did not prejudice the defendant." *People v. Lee*, 450 N.W.2d 883, 895 (Mich. 1988). The majority contends that the excluded evidence was cumulative, and that its exclusion, therefore, did not prejudice Allen. Slip Op. at 6. But, as noted above, the majority reaches this conclusion by misunderstanding the purpose for which Allen offered the evidence. Allen did not seek to introduce this evidence to show that McMullen was a violent man generally—and thus a person from whom Allen needed a shotgun to protect *himself*; Allen sought to introduce the evidence to show that, in his mind, on the day of

the shooting, McMullen posed a threat to the children.  The evidence would have been cumulative for the first point, but it was not cumulative for the second.

Because the evidence was not cumulative, it is unclear that its exclusion did not affect the outcome of the trial.  Allen's testimony indicates that he was concerned for his children on the day McMullen died, and the jury could have believed this concern drove him to take a gun to Hunter's apartment.  Therefore, it would have been more likely to believe that Allen never formed an intent to kill McMullen and that McMullen's death was an accident.  The majority observes that the jury "could just as easily" have concluded, had the evidence been let in, that Allen shot McMullen out of anger over McMullen's treatment of the children.  *Id.* at 5.  This is true, but it does not defeat Allen's ineffectiveness argument because it is not *clear* that the jury would have so reasoned.  *See Lee*, 450 N.W.2d at 895.  Had the jury heard that Hunter told Allen that McMullen abused and threatened to kill the children, it could have thought that when Allen subsequently heard that McMullen was "messing with" the children, he reasonably became alarmed and brought the shotgun to protect his children.  And, had the jury believed that Allen did not bring the shotgun to kill McMullen, it would have been less likely to believe that Allen later formed the requisite intent, and more likely to believe that McMullen's death was an accident.  There is, therefore, a reasonable probability that the Michigan Court of Appeals would have thought it unclear whether the exclusion affected the trial's outcome.  Therefore, because I believe that counsel's failure to make the evidentiary argument was unreasonable and prejudiced Allen's appeal, I would **REVERSE** the district court's judgment, **GRANT** the writ, and **REINSTATE** Allen's direct appeal of right.  *See Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004).  I respectfully dissent.